ROBERT PORTER *vs.* COUNTY COMMISSIONERS OF NORFOLK.

The list required by *St.* 1858, *c.* 319, like that required by the Rev. Sts. *c.* 7, §§ 19, 40, in order to entitle an individual to apply for an abatement of his tax, must be brought to the assessors before the tax is assessed.

THIS case, which was argued before the chief justice by *E. Ames*, for the petitioner, and *E. Wilkinson*, for the respondents, is stated in his opinion, in which the other judges concurred.

SHAW, C. J. This is a petition for a *certiorari* to the county commissioners, to certify their proceedings in the case of Robert

31 *

Porter, an inhabitant of Stoughton. The petitioner having been taxed in the town of Stoughton for real and personal property for the year 1854, applied to the assessors of that town, within six months after the assessment, for an abatement. They either declined making any abatement, or one to an amount satisfactory to him; he then made an application to the county commissioners, by petition in the nature of an appeal, to obtain the abatement which the assessors had thus refused to allow.

It appeared that the assessors of the town, before proceeding to make their assessment, had given seasonable notice to the inhabitants, requiring them to bring in to the assessors, within a specified time, lists of their polls and estates not exempted from taxation, pursuant to the provisions of the Rev. Sts. *c.* 7, § 19; and the petitioner, on applying to the assessors for abatement, in October 1854, after the assessment and after the issuing of the warrant to the collector, filed with the assessors a list of all his real and personal property, and made oath to the same. The county commissioners declined taking cognizance of the petitioner's complaint, because he had failed to comply with the requisition of the statute, in not bringing in a list before the tax was assessed; and the question then is, whether he was bound by law to bring in such a list previously to the assessment, as a condition precedent to the authority of the county commissioners to afford him relief.

The decision of the commissioners was founded, no doubt, on the Rev. Sts. *c.* 7, § 19, which directs that, before proceeding to assess, the assessors shall give notice to the inhabitants to bring in their lists within a time limited; and *c.* 7, § 40, which provides that no person shall have any abatement made by the commissioners unless he shall have brought in a list of his estate, or shall show good cause for not having done so.

It is urged, on the part of the petitioner, that this ought not to bar him of his remedy, on two grounds: first, that, by the true construction, these sections do not require the list to be brought in before, but only that notice must be given before the assessment, though it is conceded that the contrary has been generally understood to be the correct construction; second, that

this part of the Rev. Sts. has been repealed or modified by the *St.* of 1853, *c.* 319, § 3.

We cannot adopt the first construction. Of what use would be the lists of any taxable inhabitants, after the assessment was complete and the tax warrants issued? But that these lists are to be used by the assessors as a guide to the performance of their duty in making their assessments, does not stand on mere implication. By their notice, the assessors are to require these lists to be brought in within a time specified, and on oath, if required. Then, by § 21, the assessors shall, at the time appointed, make a valuation, which has been held to be a true descriptive list or specification of his real and personal property. *Newburyport* v. *County Commissioners*, 12 Met. 211. By § 22, the assessors are to receive, as the true valuation, the list brought in by him; and by § 23, if no list is brought in, they are to estimate according to their best information and belief.

Thus it appears that they are not to proceed in the assessment until the time has expired for bringing in the lists, a certain effect is to be given to them, and the assessors are not to proceed to doom any person unless it appears that he has not brought in his list, which, of course, must be after the expiration of the time. Is not the conclusion inevitable, that these are intended to be used, and made the basis of the assessment, and, of course, required to be furnished before making the assessment? We think it is so understood, if not directly adjudged, in *Newburyport* v. *County Commissioners*, 12 Met. 211; *Winnisimmet Co.* v. *Chelsea*, 6 Cush. 477; and *Lincoln* v. *Worcester*, 8 Cush. 55.

2. But the argument mainly relied upon is, that the provisions of the Rev. Sts. were repealed or modified by *St.* 1853, *c.* 319. The leading purpose of this act was to establish the fair cash value of all property, as the standard by which all taxable property is to be assessed, for the purpose of securing greater equality; and, for this purpose, to require of assessors an oath, after the valuation is completed, that it contains the names of all persons known to them to be liable to taxation in such town that year, and that such list contains a full and accurate assess-

ment of all the property of each individual liable, assessed at
its full and fair cash value, according to their best knowledge
and belief.

But there is a third section, which is supposed to bear more
particularly upon the present case. It provides, that " no abate-
ment shall be made of the taxes assessed upon any individual
until he shall have filed with the assessors a list, subscribed by
him, of his estate liable to taxation, and made oath that it is a
full and accurate list of the same, according to his best knowl-
edge and belief."

It is urged that this is a substitute for and supersedes the
§§ 19, 40, of *c.* 7 of the Rev. Sts., requiring a list; and that, by
substituting " until," an adverb of time, instead of " unless," it
is now sufficient if the list is given in at any time before the
abatement is asked for. This argument is plausible, but we think
not sound. It overlooks a distinction, kept up in these provisions
for taxation, between the power of the assessors to abate the tax
of an individual, and the right of such individual to appeal from
the decision of the assessors to a tribunal, to some extent judi-
cial, originally the court of sessions, now the court of county
commissioners, to revise the final decision of the assessors.

The law seems to have been willing to trust the same board
of assessors, who made the assessment originally, to correct any
error into which they themselves may have fallen. Knowing
the grounds on which they at first proceeded, whether with or
without a list given in, if the individual could satisfy them that,
in his particular case, they had overrated him, they might make
an abatement. But if a party intends to put himself upon his
strict rights, and secure a right to appeal to a higher tribunal,
who may proceed upon other views of the law, and other evi-
dence of the facts, than those acted on by the assessors, he shall
put himself right in the outset, by filing his list before an assess-
ment. This distinction is made as well in statutes formerly
in force, as in the Rev. Sts. The provision in *St.* 1785, *c.* 50,
§ 9, is, that no person, who has not brought in the list required
of all persons liable to the assessment, shall be admitted to
apply to the court of sessions for any abatement. But no such

restriction is imposed by the same act on the right given by § 10, to have an abatement by the assessors, if he can make it appear to them that he is rated more than his proportion.

The same distinction is observed in the revised statutes, placed in a little different order, and with slight modifications as to the mode of proceeding. By Rev. Sts. *c.* 7, § 37, any person aggrieved, &c. may apply to the assessors for an abatement, and if he shall make it appear, &c., they shall make a reasonable abatement to him; and they may examine upon oath, to be administered by either of them, the person so applying, and any witnesses, as he or they may see fit. Section 39 gives an appeal to the county commissioners; and then comes § 40, which provides that no person shall have any abatement made *by the commissioners* unless he shall have brought in a list.

Such was the law as it stood up to the statute of 1853. The latter contains no repealing clause, and therefore repeals no prior provisions, otherwise than by making a new provision inconsistent with or repugnant to it. Now it appears to us that the " list " required by §§ 19 and 40 of the Rev. Sts. and the " list " required by *St.* 1853, *c.* 319, § 3, though somewhat alike in character, are required for different purposes, and the latter is not an entire substitute for the former. The statute makes no reference to the case of an appeal to the commissioners. It appears that the assessors had the power to correct their own doings, and abate a tax, whether there has been a list given in before assessment or not; and the Rev. Sts. *c.* 7, § 37, gave them power to examine the applicant taxpayer on oath, and examine other evidence to be adduced. The statute of 1853, in order that the public may have a higher and better security than that of a mere examination on oath, which might be had *viva voce*, provides that no abatement shall be made until a list shall have been filed of the party's property, signed and sworn to, making him, in terms, responsible, under the penalties of perjury, for any wilful falsehood. And this " list," instead of that contemplated to be filed before assessment, is to be under oath, not merely if required by the assessors, or one of them, but peremptorily. The main difference between this provision and that of Rev. Sts. *c.* 7, § 37,

is, that in addition to any other evidence which may be ad-duced, it substitutes the positive requisition of a list, subscribed and verified by oath, and filed, instead of the examination on oath which the assessors, or one of them, was authorized to make under the former act. It contains negative words, that no abatement shall be made until such list shall have been filed, and therefore, to that extent, it is a repeal of the former law.

But this does not, we think, touch the question of a right to appeal to the county commissioners. It leaves the Rev. Sts. *c.* 7, § 40, as it stood, that no person shall have an abatement by the commissioners unless he shall have brought in a list previously to the assessment. Possibly we may not see all the reasons for this ; perhaps, as before intimated, the law might be willing to trust the assessors, who have all the books and all the evidence before them, who can readily compare the assess-ment on any one person with those on the other taxpaying inhabitants, and who may have better means of judging of his ratable proportion, to correct their own doings; whereas, if the party will place himself on the higher ground of strict right, and go to a higher tribunal, he shall at least give the assessors, and the other taxpaying inhabitants, the benefit of his own previous statement of all his own taxable property, real and personal, verified by his own oath, if required. But whatever may be the reasons, we think the provision of law is clear and express, and is not repealed or modified in this respect by the statute of 1853. We think therefore the county commissioners were right in declining to take jurisdiction of the petitioner's claim.          *Petition for a writ of certiorari dismissed.*